IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                          No. CR 06-2317 JB

ROBERTO PANDO-MATA,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Downward Departure, Reasonable Sentence, and Sentencing Memorandum, filed April 3, 2007 (Doc. 30)("Sentencing Memorandum"). The Court held a sentencing hearing on June 1, 2007.  The primary issue is whether the Court should grant Defendant Roberto Pando-Mata a variance from the sentence the United States Sentencing Guidelines recommend because the sentence is greater than necessary to achieve federal sentencing goals.  Because the Court believes that, when it considers Pando-Mata's overall criminal history in the context of the 18 U.S.C. § 3553(a) factors applicable to its sentencing analysis, the sentence that the Guidelines recommend is too high, the Court will grant a variance from the guideline sentence.

## FACTUAL BACKGROUND

Pando-Mata reported that he was born on April 22, 1965 in Guadalupe Victoria, Chihuahua, Mexico.  See Presentence Investigation Report ¶ 27, at 9 ("PSR"); Sentencing Memorandum at 2. Pando-Mata indicated that his parents are deceased and that he has nine siblings -- five sisters and four brothers -- who reside in Mexico, California, Texas, and Oklahoma.  See PSR ¶ 27, at 9.

Pando-Mata states that he maintains a close relationship with his sisters, but cannot recall his last contact with his brothers.  See id. ¶ 28, at 9.

Pando-Mata has been married for twenty-one years and has two children, ages twenty-one and fifteen.  See PSR ¶ 30, at 9; Sentencing Memorandum at 2.  His wife resides in Mexico with his youngest child; his oldest child resides in Oklahoma.  See PSR ¶ 30, at 9-10.  Pando-Mata reports that he is in regular contact with his wife, but that he has not had contact with either of his children for several months.  See id.

Pando-Mata represents that he first entered the United States in 1980 in search of work.  See PSR ¶ 29, at 9; Sentencing Memorandum at 2.  He indicated that, since that time, he has lived and worked in various locations, including Oklahoma, Texas, Louisiana, Mississippi, Tennessee, and Kansas.  See PSR ¶ 29, at 9.  On May 25, 1984, Pando-Mata was arrested and pled guilty to illegal entry in the United States District Court for the Western District of Texas.  See PSR ¶ 21, at 6.  He was deported to Mexico on July 24, 1984.  See id.

On July 5,  1988, the United States Border Patrol ("USBP") again arrested Pando-Mata and deported him to Mexico on July 14, 1988.  See id. ¶ 25, at 8.  The following month, on August 8, 1988, Las Cruces, New Mexico Police Department officers arrested Pando-Mata and charged him with possession of marijuana with intent to distribute.  See PSR ¶ 26, at 8.  State prosecutors filed notice of nolle prosequi on October 31, 1988.  See id.

On July 30, 1995, USBP agents performed a traffic stop on a van that Pando-Mata was driving on New Mexico State Highway 9 near Columbus, New Mexico.  See id. ¶ 22, at 6; Sentencing Memorandum at 3.  Sixteen individuals, all Mexican nationals, were traveling in the van.  See PSR ¶ 22, at 6; Sentencing Memorandum at 3.  On December 8, 1995, Pando-Mata pled guilty to transporting illegal aliens into the United States and was sentenced to 132 days time served.  See

PSR ¶ 22, at 6.  Pando-Mata was deported to Mexico on December 21, 1995.  <u>See</u> <u>id.</u>

On March 20, 2001, Oklahoma state authorities arrested Pando-Mata after he participated in four undercover cocaine transactions.  <u>See</u> PSR ¶ 23, at 7.  Pando-Mata pled guilty to four counts of unlawful possession of a controlled substance on May 15, 2001 and was sentenced to two years imprisonment.  <u>See</u> <u>id.</u>  Pando-Mata was deported to Mexico on January 12, 2002.  <u>See</u> <u>id.</u>

On August 25, 2006, USBP agents encountered Pando-Mata in Sunland Park, New Mexico, hiding in a mountain draw with five other individuals.  <u>See</u> <u>id.</u> ¶ 5, at 3.  When questioned about his citizenship, Pando-Mata admitted to the agents that he was a Mexican national and present in the United States illegally.  <u>See</u> <u>id</u>.  Pando-Mata acknowledges that he was not authorized to be in the United States, but states that he returned "to work and send money to my family in Mexico."  <u>Id.</u> ¶ 10, at 4.

## PROCEDURAL BACKGROUND

On November 7, 2006, the United States filed an Information charging Pando-Mata with illegal re-entry of a deported alien while an order of exclusion, deportation, and removal was outstanding in violation of 8 U.S.C. § 1326(a) and (b).  <u>See</u> Information, filed November 7, 2006 (Doc. 10).  On the same day, the United States and Pando-Mata entered into a plea agreement, made pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and the United States Attorney's Fast Track Program, in which Pando-Mata pled guilty to the charge contained in the Information.  <u>See</u> Fast Track Plea Agreement ¶ 3, at 2, filed November 7, 2006 (Doc. 14).  Under the terms of the plea agreement, Pando-Mata agreed "not to seek any further reduction, departure, deviation, or variance in the Final Adjusted Offense Level or the Criminal History Category as determined by the Court."  <u>Id.</u> ¶ 4.g, at 3.  The Court scheduled Pando-Mata's sentencing hearing for January 26, 2007.  <u>See</u> Notice of Sentencing Hearing, filed December 28, 2006 (Doc. 16).

Two days before the sentencing hearing, on January 24, 2007, Pando-Mata's previous counsel requested to withdraw and reported that "Pando-Mata is unhappy with counsel's representation and advice and wishes to have his sentencing continued and new counsel appointed so that his objections [to the PSR] may be addressed and further researched." Motion to Withdraw as Counsel ¶ 5, at 1, filed January 24, 2007 (Doc. 18). The Court granted Pando-Mata's previous counsel's request on January 26, 2007, see Order Allowing Withdrawal of Counsel, filed January 26, 2007 (Doc. 21), and appointed new counsel at that time, see CJA 20 Appointment of and Authority to Pay Court Appointed Counsel, filed January 26, 2007 (Doc. 22).

On March 18, 2007, after consulting with his new counsel, Pando-Mata filed an unopposed motion to withdraw from the Fast Track Plea Agreement so that he could enter a new guilty plea that would allow him to request a variance. See Defendant's Unopposed Motion to Withdraw Guilty Plea, filed March 18, 2007 (Doc. 25); Sentencing Memorandum ¶¶ 6-7, at 1-2. The Court granted Pando-Mata's request to withdraw his plea on March 26, 2007, see Order, filed March 26, 2007 (Doc. 26), and Pando-Mata pled guilty to the charges contained in the November 7, 2006 Information on April 2, 2007, see Plea Minute Sheet, filed April 2, 2007 (Doc. 28).

In calculating Pando-Mata's guideline sentence, the United States Probation Office ("USPO") assigned Pando-Mata a base offense level of 8, see U.S.S.G. § 2L1.2(a), increased his offense level 16 levels because he had previously been deported after being convicted of an alien-smuggling offense, see U.S.S.G. § 2L1.2(b)(1)(A)(vii), and subtracted 3 levels for Pando-Mata's acceptance of responsibility, see U.S.S.G. § 3E1.1. See PSR ¶¶ 12-13, 18, at 5. An offense level of 21, combined with Pando-Mata's criminal history category of II, results in a guideline sentencing range of 41 to 51 months. The USPO did not identify any factors that might entitle Pando-Mata to a downward departure under the Guidelines or warrant a variance from the sentence that the

Guidelines recommend.  <u>See</u> PSR ¶ 47, at 13.

Pando-Mata filed his Sentencing Memorandum on April 3, 2007.  Pando-Mata does not object to the factual content of the PSR that the USPO prepared or assert that the USPO calculated the guideline sentence incorrectly.  <u>See</u> Transcript of Hearing at 2:3-7; 2:25-3:4 (Johnson)(taken June 1, 2007)("Transcript").  Rather, he contends that the 18 U.S.C. § 3553(a) factors applicable to the Court's sentencing analysis counsel for a variance from the guideline sentence, because the sentence the Guidelines recommend is greater than necessary to achieve federal sentencing goals.[1] <u>See</u> Sentencing Memorandum at 9-10.  Pando-Mata moves the Court to impose a sentence below the range the Guidelines recommend.  <u>See</u> <u>id.</u> at 10.

The United States filed a response in opposition to Pando-Mata's request for a variance on April 19, 2007.  <u>See</u> United States' Response to Defendant's  Motion for Downward Departure, Reasonable Sentence and Sentencing Memorandum Filed April 3, 2007, filed April 25, 2007 (Doc. 32)("United States' Response").  The United States contends that a sentence within the correctly calculated guideline range is a presumptively reasonable sentence and argues that Pando-Mata has not presented evidence effectively rebutting that presumption.  <u>See</u> <u>id.</u> at 2-3.  The United States requests the Court impose a sentence within the guideline range.  <u>See</u> <u>id.</u> at 3.

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in <u>United States v. Booker</u>, 543 U.S. 220 (2005), "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor

---

[1]At the sentencing hearing, the Court acknowledged that Pando-Mata's motion was styled as a motion for a downward departure under the Guidelines, but seemed to raise arguments for a variance exclusively.  <u>See</u> Transcript at 2:8-10 (Court).  Pando-Mata's counsel confirmed that the Court had interpreted the motion correctly, and stated that the motion requested the Court grant Pando-Mata a variance from the guideline sentence.  <u>See</u> Transcript at 2:11-12 (Johnson).

the sentence in light of other statutory concerns as well." Id. at 245-46. Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See

Rita v. United States, No. 06-5754, 2007 U.S. LEXIS 8269, at *21 (U.S. June 21, 2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years" worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

In Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing.  See 543 U.S. at 246.  To conform with Congressional intent, sentences must be "reasonable."  Id. at 260-61.  Consistent with that recognition, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness.  See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006).  First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable."  Id.  Second, once this presumption is established, "[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)."  United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 15547, at *27 (10th Cir. June 27, 2007).

On the other hand, criminal sentences that vary materially from the properly calculated

guideline sentencing range are not accorded a presumption of reasonableness.  See United States v. Cage, 451 F.3d at 594-95.  The Tenth Circuit has explained that the determination whether a sentence is reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's departure from the guideline sentence.  See United States v. Bishop, 469 F.3d 896, 907 (10th Cir. 2006).[2]

Finally, the Supreme Court has recently explained that the presumption of reasonableness afforded guideline sentences is "an appellate court presumption" and emphasized that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."  Rita v. United States, 2007 U.S. LEXIS 8269, at **24-25.  More specifically, "[a] nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence."  Id. at *27.

## ANALYSIS

The Court has carefully considered Pando-Mata's sentencing memorandum, the arguments of counsel at the hearing, and Pando-Mata's own comments at the sentencing. The Court has also carefully considered all the factors enumerated in 18 U.S.C. § 3553(a) to arrive at a sentence that is sufficient, but not greater than necessary, to satisfy federal sentencing objectives.  Pursuant to its

---

[2] In its June 21, 2007 opinion in Rita v. United States, the Supreme Court indicated that it will evaluate the Tenth Circuit's approach, i.e., the Tenth Circuit's understanding that "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance," next term in United States v. Gall, No. 06-7949. Rita v. United States, 2007 U.S. LEXIS 8269, at *31 (citing United States v. Bishop, 469 F.3d at 907, and cases from the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits). The Supreme Court cautioned, however, that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" for sentences that fall outside the guideline range. Rita v. United States, 2007 U.S. LEXIS 8269, at *30.

authority under United States v. Booker and its obligation to consider each of the factors enumerated in 18 U.S.C. § 3553(a), the Court will grant a variance from the sentence the Guidelines recommend.

## I.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE OFFENDER.

While there is a tendency for defendants to characterize illegal re-entry as a minor crime, Congress and the Sentencing Commission have signaled otherwise with the serious penalties they have assigned to the crime. The 8-level, 12-level, and 16-level enhancements, see U.S.S.G. § 2L1.2(b)(1)(A)-(C), place the crime within Zone D on the Sentencing Table. The Court believes, however, that when it evaluates the nature and circumstances of Pando-Mata's illegal re-entry offense, his personal history and characteristics, and the age and circumstances of the felony conviction that constitutes the basis for the most significant enhancement in his offense level, a variance from the guideline sentence is appropriate.

Pando-Mata does not argue that he was unaware that his re-entry into the United States was illegal, see PSR ¶ 10, at 4, nor does he argue that illegal re-entry is not a serious crime. Congress, as the elected branch of government, has decided that the crime for which Pando-Mata has been convicted is a serious offense. See 8 U.S.C. § 1326(b)(2) (authorizing up to twenty years imprisonment for illegal re-entry). Policy decisions are best left with the legislative branch and the Court believes that Congress has decided that illegal re-entry is a serious offense.

What Pando-Mata argues is that the 16-level enhancement the Guidelines assign him for his 1995 alien-smuggling conviction is not proportional to the relatively benign nature of the conduct underlying the offense. See Sentencing Memorandum at 5. Pando-Mata asserts that he had not agreed to transport illegal aliens nor accept money to do so, but was merely driving the van in which the group was traveling at the time USBP agents stopped the travelers. See id. at 3. Although

Pando-Mata admits that a number of the travelers advised USBP agents that they had paid him $100.00 to transport them to the United States, see id.; PSR ¶ 22, at 6, he insists that the $100.00 payments were contributions each individual paid to purchase collectively a van in which the group could travel, see Sentencing Memorandum at 3.   Pando-Mata represents that the typical fee smugglers charged at the time he was arrested was at least $1,000.00 per person, see Transcript at 6:5-7 (Johnson), and maintains that "it is absurd that a person who transports illegal aliens would only charge each alien $100, to be transported to the United States," Sentencing Memorandum at 3.   Moreover, Pando-Mata emphasizes that, at the time of his conviction in 1995, the alien-smuggling offense for which he was convicted was not classified as an aggravated felony.   See Transcript at 9:4-8 (Johnson).   Pando-Mata summarizes that, based on these mitigating factors, imposing a 16-level enhancement based on this conviction would "frustrate the goals of sentencing, the mandates of [United States v. Booker], and the factors set out in 18 U.S.C. § 3553(a)."   Id. at 5.

The United States acknowledges that, consistent with United States v. Booker, it is appropriate for the Court to consider the circumstances of Pando-Mata's 1995 alien-smuggling offense in arriving at its sentence.   See Transcript at 11:2-5 (Backinoff).   The United States contends, however, that the circumstances of this case are not novel and do not present unique issues with respect to transporting aliens.   See id. at 11:5-8 (Backinoff).   At the sentencing hearing in this case, the United States' counsel stated that, in her experience, it was very common for aliens traveling together to maintain that they were traveling collectively and had contributed funds in a group effort to avoid being classified as a smuggler or group leader.   See id. at 11:8-19 (Backinoff). The United States concludes that neither the age of Pando-Mata's 1995 conviction, nor his representation that he merely participated in a group effort to travel across the border are sufficient to justify a sentence outside the guideline range.   See id. at 13:19-23 (Backinoff).

In <u>United States v. Sanchez-Juarez</u>, 446 F.3d 1109 (10th Cir. 2006), the Tenth Circuit considered the reasonableness of applying a 16-level enhancement in the case of a defendant who had been convicted of illegal re-entry after having previously been convicted of an alien-smuggling offense.  <u>See</u> <u>id.</u> at 1111.  Like Pando-Mata, the defendant in <u>United States v. Sanchez-Juarez</u> was driving a van containing illegal aliens when USBP agents performed a traffic stop on the van.  <u>See</u> <u>id.</u>  Moreover, a number of the passengers in <u>United States v. Sanchez-Juarez</u> informed the USBP agents that the defendant had offered to transport them to the United States if they would collectively contribute $900.00 for him to purchase a vehicle.  <u>See</u> <u>id.</u>  The defendant in <u>United States v. Sanchez-Juarez</u> was sentenced to 194 days time served for the alien-smuggling offense. <u>See</u> <u>id.</u>

On appeal, the defendant in <u>United States v. Sanchez-Juarez</u> argued that the district court -- which had imposed a guideline sentence -- erred in not varying from the Guidelines because the actual conduct involved in his alien smuggling conviction was incongruent with the 16-level enhancement the Guidelines required.  <u>See</u> <u>id.</u> at 1117.  In vacating the sentence, the Tenth Circuit did not rule on the merits of the defendant's argument, but remanded the case to the district court because the district court had not explained whether it had considered the argument in its 18 U.S.C. § 3553(a) analysis and the argument was "not clearly meritless."  <u>Id.</u>  Finally, although the Tenth Circuit in <u>United States v. Sanchez-Juarez</u> took no position on what the final sentence should be, it observed that, "where [U.S.S.G.] § 2L1.2 impose[s] a 16-level enhancement but the actual offense conduct was 'relatively trivial,' there was a 'reasonable probability' that a district court exercising its discretion in light of the [18 U.S.C.] § 3553(a) factors would impose a below-Guidelines sentence."  <u>Id.</u> at 1118 (quoting <u>United States v. Trujillo-Terrazas</u>, 405 F.3d at 819).

The Court notes that, because of the age of his 1995 conviction, Pando-Mata has not received

any criminal history points in association with the conviction.  See PSR ¶ 22, at 6.  To some extent, therefore, Pando-Mata has already benefitted under the Guidelines from the age of his conviction. Nevertheless, the Court acknowledges that the alien-smuggling conviction still results in a 16-level enhancement and believes that, when considering the overall adjusted offense level in the context of the Tenth Circuit's dicta in United States v. Sanchez-Juarez and the 18 U.S.C. § 3553(a) factors applicable to its analysis, the final adjusted offense level is too high.

The Court acknowledges that Pando-Mata has some criminal history, but believes that, when it weighs his overall criminal history against the other 18 U.S.C. § 3553(a) factors, certain factors mitigate the severity of that history.  First, the 1995 conviction is now twelve years old.  Second, unlike many of the other defendants the Court sees with sentences as long as the one the Guidelines prescribe for Pando-Mata, Pando-Mata's criminal history is largely absent of violence and no evidence has been presented indicating that he has a violent personality.  While the Court recognizes that Pando-Mata has one conviction for a controlled substances offense, the conviction is for a possession offense, rather than a trafficking offense.  Finally, while the Court does not wish to minimize the seriousness of Pando-Mata's alien-smuggling offense, it also does not have any reason to doubt the veracity of his account of the 1995 incident.

Although a presumption of reasonableness does not limit a sentencing court's discretion, see Rita v. United States, 2007 U.S. LEXIS 8269, at **24-25, the Court continues to believe that the Guidelines are a helpful place to begin its sentencing analysis and are useful in keeping sentences consistent among similarly situated defendants.  In this case, however, when the Court considers Pando-Mata's personal history and characteristics and the circumstances related to his 1995 offense which constitutes the basis for his sentencing enhancement, it believes that the sentence the Guidelines recommend is greater than necessary to satisfy federal sentencing goals.  On the other

hand, the Court remains concerned about the number of people involved in Pando-Mata's smuggling offense and believes that too significant of a variance may contravene Congressional policy regarding the seriousness of alien smuggling. The Court believes that a sentence consistent with an offense level of 17 -- which would reflect a 12-level increase rather than a 16-level increase over the base offense level for a re-entry conviction and which would result in a guideline sentencing range of 27 to 33 months -- more accurately reflects the policies that are expressed in the Guidelines and results in a reasonable sentence that is sufficient without being greater than necessary to achieve Congress' sentencing objectives.

## II.    THE NEED FOR THE SENTENCE TO PROMOTE CERTAIN STATUTORY OBJECTIVES.

Among other objectives, the Court's sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide adequate deterrence to both the defendant and to the public at large. The Court believes that the sentence of 30 months, in the middle of the range it has found, reflects the seriousness of the illegal re-entry offense, but also promotes respect for the law and provides just punishment. The Court also believes that this sentence affords adequate deterrence and protects the public. The Court believes that a sentence of 30 months fully reflects each of the factors enumerated in 18 U.S.C. § 3553(a), including the need to impose uniform sentences to similarly situated defendants.

In sum, the sentence accounts for the Court's concerns regarding the Guidelines' incongruence with the severity of the conduct underlying Pando-Mata's 1995 alien-smuggling offense and his overall criminal history, but still reflects the important policies behind federal immigration laws. The Court believes that a variance from the sentence the Guidelines recommend to a sentence of 30 months is fair, reasonable, and sufficient without being greater than necessary

to meet federal sentencing objectives.

**IT IS ORDERED** that the Defendant's Motion for Downward Departure, Reasonable

Sentence, and Sentencing Memorandum is granted.  The Court will vary from the sentence the

Guidelines recommend and sentence Pando-Mata to a term of 30 months.

_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Larry Gomez
   Acting United States Attorney
Rhonda P. Backinoff
   Assistant United States Attorney
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Erlinda O. Johnson
Albuquerque, New Mexico

       *Attorney for the Defendant*